**AFFIRMED and Opinion Filed January 25, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00764-CV**

**IN THE INTEREST OF C.P.C. AND D.L.C., CHILDREN**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-20-0978**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

Mother appeals the trial court's judgment terminating her parental rights to her twin children, C.P.C. and D.L.C. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

In July 2020, the Texas Department of Family and Protective Services (the Department) filed a petition seeking conservatorship and termination of Mother's parental rights with respect to C.P.C. and D.L.C. The Department filed a supporting affidavit stating it had received a report that the twins, who were born premature on May 3, 2020, were in the NICU and that Mother admitted using methamphetamine while pregnant with them in February of that year. The report also alleged that Mother had been diagnosed with mental illness, that she had attempted suicide while

pregnant in January, and that she had a history of domestic violence with her boyfriend. According to the affidavit, the children's meconium tested negative for drugs, and medical records showed that Mother passed multiple drug tests in March and April of that year. Nevertheless, Mother tested positive for amphetamines and methamphetamine ten days after the children's birth.

The trial court granted the Department temporary conservatorship and ordered Mother to comply with a Family Service Plan. That plan, which Mother received in August 2020, required her to: (1) obtain and maintain stable housing and employment; (2) attend, participate in, and successfully complete parenting classes; (3) submit to a drug-and-alcohol dependency evaluation; (4) submit to and successfully complete substance abuse treatment, including attending support services at least three times a week; (5) submit to drug testing at the Department's direction; (6) submit to a psychosocial evaluation and follow all recommendations; (7) attend and cooperate fully in counseling sessions; and (8) attend, participate in, and successfully complete a domestic violence course.

In advance of the July 16, 2021 final hearing, Mother filed a motion seeking to continue the case and extend the temporary conservatorship beyond the statutory dismissal date of August 2, 2021, arguing that she "has completed the majority of services and is working on getting stable housing but needs more time to locate stable housing." The trial court held an evidentiary hearing on the motion, at which Mother's chemical dependency counselor, Erika Stroud, testified that, although

Mother had participated in some of her court-ordered counseling services, she did not complete them. In fact, Ms. Shroud testified that Mother's "attendance was very sporadic," that "she hasn't met any of her treatment plan goals," and that she hasn't seen Mother "in quite some time." According to Ms. Shroud, in the year since Mother began the program, she had attended less than a third of the program's sessions. Ms. Shroud noted that completing the program should have taken Mother only three months, and she added that, because it had been so long since Mother last attended sessions, she would need to reassess Mother before counseling could resume.

Department caseworker Kristina Bowen testified that, in addition to testing positive for drugs while the case was pending in April and June of 2021, Mother did not submit to drug tests requested by the Department on at least sixteen occasions: October 15, 2020; November 10, 2020; November 30, 2020; December 4, 2020; December 8, 2020; December 10, 2020; December 11, 2020; January 22, 2021; January 25, 2021; February 1, 2021; April 19, 2021; May 7, 2021; May 11, 2021; May 18, 2021; June 6, 2021; and July 13, 2021. With respect to the July 13 request, Ms. Bowen testified that Mother texted her, saying she could not leave for testing because she was in her back yard, helping her landlord mow the lawn to avoid eviction. Ms. Bowen, who was approximately 15 minutes away from Mother's residence at the time, said she drove over to the residence and confirmed both that Mother was not in the yard and that the lawn had not been recently mowed. To Ms.

Bowen's knowledge, Mother never initiated the domestic violence class required under her service plan.

Mother testified that she was, in fact, in her back yard when she missed the test on July 13, and she accused Ms. Bowen of lying. Mother said she did not know how many times she failed to take a drug test upon request, although she admitted she did not comply with other aspects of the service plan. When asked if she completed court-ordered parenting classes, Mother responded: "I have not completed it. I just wanted more services." Similarly, when asked whether she completed her court-ordered counseling, Mother responded: "I have not. I wanted more services." She further testified that, although she was "[t]otally engaged" in her classes and counseling, she couldn't "always be at class" or "always attend individual counseling" because she had to work.

Mother also attributed her failure to complete services, in part, to domestic violence injuries she suffered to her eyes and hands in July 2020. She admitted that her injuries had improved by the time of the trial, and she did not know exactly when she had recovered from them, but the injuries "caused [her] some delay in getting all of [her] services started." Mother said her ability to find stable employment, as required by the service plan, was also hindered by the fact that she did not have a valid driver's license. Nevertheless, she worked various jobs close to home, doing "haul offs and make readies."

After hearing the evidence, the trial court denied Mother's motion, stating:

This case has been going on for approximately 50 weeks, and I'm not hearing any evidence that any services at all have been completed. To the contrary, we have a significant number of missed drug tests. If I do my math correctly, probably -- maybe a third of the sessions that could have been attended for just one of the [services] have been completed. And it doesn't seem like any of the other ones have even been initiated. So I don't think that there has been substantial compliance with the service plan or any evidence of any remedy of the situation that brought the kids into care that would constitute extraordinary circumstances.

I haven't heard in any way any extraordinary circumstances concerning the children that would cause the Motion to Extend to be in their best interest, so I am going to deny that motion . . .

The court proceeded with the trial, after which it terminated Mother's parental rights.

Mother contends the trial court erred by denying her motion to extend. We review that issue for abuse of discretion. *See In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at \*11 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.). A trial court abuses its discretion if it acts without any guiding rules or principles; it does not abuse its discretion by basing its decision on conflicting evidence. *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998).

Under the family code, unless trial has commenced, a Department's suit seeking to terminate parental rights is automatically dismissed on the first Monday after the first anniversary of the date the court entered its order appointing the Department as a temporary managing conservator. TEX. FAM. CODE § 263.401(a). The trial court may extend the automatic dismissal deadline for up to 180 days if it finds "that extraordinary circumstances necessitate the child remaining in the

temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). In considering "whether to find that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department for a case in which the court orders a parent to complete a substance abuse treatment program, the court shall consider whether the parent made a good faith effort to successfully complete the program." *Id.* § 263 (b-2).

According to Mother, the evidence shows she made a good faith effort to complete her substance abuse treatment program. From that premise, she argues the trial court was required to conclude that extraordinary circumstances necessitated an extension, and it abused its discretion by concluding otherwise. We disagree.

As an initial matter, the statute does not provide that extraordinary circumstances exist whenever a parent has made a good faith effort to complete a treatment program. Rather, it states that the trial court must consider any such effort as part of its determination on whether extraordinary circumstances exist. *See id.* Nothing in the record suggests the trial court did not appropriately consider mother's participation in her substance abuse treatment program. On the contrary, the trial court specifically referenced Mother's attendance in her treatment counseling sessions and weighed it alongside evidence showing that Mother made little or no effort to complete other aspects of her service plan.

–6–

Moreover, there was evidence from which the trial court could conclude Mother did not make a good faith effort to complete her substance abuse treatment program. Mother's treatment counselor testified that her "attendance was very sporadic," that "she hasn't met any of her treatment plan goals," and that she hasn't seen Mother "in quite some time." Ms. Bowen also testified that Mother failed to take sixteen drug tests requested by the Department. And the evidence shows Mother tested positive for amphetamines two weeks before she filed her motion to extend.

On this record, the trial court did not abuse its discretion by determining there were no extraordinary circumstances justifying an extension of the statutory dismissal deadline. We affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
210764f.p05                           JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

IN THE INTEREST OF C.P.C. AND D.L.C., CHILDREN

No. 05-21-00764-CV     V.

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. FA-20-0978.
Opinion delivered by Justice Carlyle. Justices Myers and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of January, 2022.